UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
                                 :

MIGUEL A. RIVERA,             :

                      :

        Plaintiff,       :

                      :

         v.          :

                      :

THE FEDERAL BUREAU OF  :
PRISONS, FREDERICK MENIFEE, as :
Warden of the Federal Correctional :
Institution Otisville, CRAIG APKER, as :
Warden of the Federal Correctional :
Institution Otisville, DOCTOR D. :
SOMMER, Clinical Director of the :
Federal Correctional Institution :
Otisville, DOCTOR P. WILLIAMS, :
Clinical Director of the Federal :
Correctional Institution Otisville, and :
MS. SULLIVAN, Health Services :
Administrator of the Federal :
Correctional Institution Otisville, :

                      :

       Defendants.   :
------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/5/09

__OPINION AND ORDER__

08 Civ. 5590 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

        Miguel A. Rivera, presently incarcerated and proceeding *pro se*,

brings this action against the Federal Bureau of Prisons and its employees

Frederick Menifee, former Warden of the Federal Correctional Institution in

Otisville, New York ("FCI Otisville"), Craig Apker, former Warden of FCI

Otisville, Dr. Diane Sommer, Clinical Director of FCI Otisville, Dr. Phyllis

Williams, former Clinical Director of FCI Otisville, and Barbara Sullivan, former

Health Services Administrator of FCI Otisville, claiming violations of his rights

under federal law. Though Rivera brings suit against federal defendants pursuant

to 42 U.S.C. § 1983, the court will liberally construe his claims against federal

defendants under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388

(1971). Rivera seeks to hold defendants liable for their actions under the Prison

Litigation Reform Act ("PLRA") and the Federal Tort Claims Act ("FTCA").

Specifically, Rivera asserts that defendants were willfully indifferent to his

medical needs, or alternatively, that defendants were at least negligent in treating

him.[1]  Rivera also alleges that defendants unlawfully transferred him from FCI

Otisville to the Federal Correctional Institution in Butner, North Carolina ("FCI

Butner").[2]  Defendants now move for partial dismissal of the Complaint pursuant

to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the

reasons stated below, defendants' motion is granted in part and denied in part.

---

[1]     *See* Complaint ("Compl.") at 2.

[2]     *See id.* ¶¶ 15, 25.

2

## II.   BACKGROUND[3]

Rivera, a federal prisoner convicted of robbery in the early 1990s,[4] has been diabetic for over fifteen years.[5]  On January 6, 2002, Rivera was transferred from the United States Penitentiary in Beaumont, Texas to FCI Otisville.[6]  Prior to arriving at FCI Otisville, the creatinine level in Rivera's blood — an indicator of kidney function — was normal.[7]  Rivera provided a blood-test report showing that on February 27, 2002, his creatinine level was 1.5 milligrams/deciliter (mg/dL), a level within the normal range of 0.6 mg/dL - 1.6 mg/dL.[8]  By June 12, 2002, Rivera's creatinine level rose above 1.6 mg/dL to 2.2 mg/dL, which is outside the normal range.[9]  On May 25, 2004, Rivera's creatinine level was 2.0 mg/dL, also

---

[3]      The following recitation of facts is drawn from the Complaint and presumed to be true for the purpose of this motion.

[4]      *See id.* ¶ 1.

[5]      *See id.* ¶ 9.

[6]      *See id.* ¶ 1.

[7]      *See id.* ¶ 9.

[8]      *See* 2/27/02 Blood-Test Report, Ex. 2 to Compl., at US14.

[9]      *See* 6/12/02 Blood-Test Report, Ex. 3 to Compl., at US15.

outside the normal range.[10] His creatinine level eventually reached 3.8 mg/dL,[11]

but Rivera does not provide a blood-test result or any other support for this

allegation, nor does he provide creatinine levels or results from any other blood

tests.

On April 10, 2007, Rivera was transferred from FCI Otisville to FCI

Butner.[12] After his arrival at FCI Butner, Rivera learned that "he was transferred

to obtain medical attention for renal failure, i.e. kidney failure" and that he will

need to begin dialysis treatment in two to three years.[13] Rivera believes that his

kidneys have failed or are failing because he received inadequate medical care at

FCI Otisville.

Rivera provides the following additional support for his conclusion of

inadequate medical care. *First*, on September 8, 2003, Dr. Williams relied on

another inmate's albumin/creatinine ratio in diagnosing Rivera.[14] *Second*,

---

[10] *See* 5/25/04 Blood-Test Report, Ex. 5 to Compl., at US19.

[11] *See* Compl. ¶ 13.

[12] *See id*. ¶¶ 15, 18.

[13] *Id*. ¶ 17.

[14] *See id*. ¶¶ 10, 11 (alleging that Dr. Williams relied upon the blood-test report of a Rodney Baldwin and that this report was placed in Rivera's medical file); 9/08/03 Blood-Test Report, Ex. 3 to Compl., at US16 (Baldwin's blood-test report).

4

defendants failed to monitor Rivera's albumin/creatinine ratio and other indicators of kidney failure for possibly up to five years.[15]  *Third*, Rivera's kidney damage is irreversible and his creatinine level cannot be lowered — at least not with medication.[16]

## III.  LEGAL STANDARDS

### A.  Lack of Subject Matter Jurisdiction

A district court may exercise subject matter jurisdiction if the action "arises under" federal law.[17]  An action "arises under" federal law if "'in order for

---

[15]   Rivera explains that "[a]t no time was the Plaintiff ordered to complete blood work to determine the cause of a high Creatinine Level, nor was he ordered to see a Nephrologist or to complete a 24 urine collection to determine the amount of protein in Plaintiff's urine." Compl. ¶ 13.  Rivera claims he was never given any medication to help prevent kidney failure and that he never received a blood glucose test after fasting, a creatinine clearance test, a blood urea nitrogen test, a PTH test, an ultrasound of his kidneys, a duplex doppler study, or a biopsy of the kidney. *See* 7/21/07Attachment to Attempt at Informal Resolution, Ex. 1 to Compl., at US07.

Defendants did, however, monitor some indicators of kidney failure while Rivera was confined at FCI Otisville.  For example, Rivera describes a creatinine test taken on May 25, 2004. *See* Compl. ¶ 13.  Nonetheless, the issue in this case is not whether defendants were testing Rivera but whether defendants *used* the information obtained from the tests to *properly* monitor and treat him.

[16]   *See* Compl. ¶ 17; 10/28/07Attachment to B.P. 8, Ex. 7 to Compl., at US30.

[17]   *Bracey v. Board of Educ. of City of Bridgeport*, 368 F.3d 108, 113 (2d Cir. 2004) (citing 28 U.S.C. § 1331).

the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law.'"[18]  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case."[19]

## B.    Failure to State a Claim

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "'accept as true all of the factual allegations contained in the complaint'"[20] and "draw all reasonable inferences in the plaintiff's favor."[21]   Moreover, as Rivera is appearing *pro se*, this Court will "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s].'"[22]   A complaint must provide "the grounds upon

---

[18]    *Id.* at 114 (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1993) (superseded by statute on other grounds)).

[19]    *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).

[20]    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)).

[21]    *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[22]    *Weixel v. Board of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)).

which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level'"[23] in order to survive a motion to dismiss. Although the complaint need not provide "detailed factual allegations,"[24] it must nonetheless "amplify a claim with some factual allegations . . . to render the claim *plausible*."[25] "[B]ald assertions and conclusions of law will not suffice."[26]

### C.   Exhaustion of Administrative Remedies

The PLRA mandates that a prisoner exhaust all administrative remedies before bringing an action in federal court regarding prison conditions.[27]

---

[23]   *ATSI   Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). *Accord Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam) (noting that plaintiffs must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'") ( quoting *Twombly*, 550 U.S. at 555).

[24]   *Twombly*, 550 U.S. at 555.

[25]   *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

[26]   *Law Offices of Curtis V. Trinko, LLP v. Bell Atl. Corp.*, 309 F.3d 71, 74 (2d Cir. 2002) (citation omitted).

[27]   *See* 42 U.S.C. § 1997e(a) (2006) (providing that: "No action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Porter v. Nussle,* 534 U.S. 516, 516 (2002); *Booth v. Churner*, 532 U.S. 732, 739 (2001).

7

Failure to exhaust is an absolute bar to an inmate's action in federal court: "[section] 1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all*."[28]  Because the plain language of section 1997e(a) states "no action shall be brought," an inmate must have exhausted his claims at the time of the initial filing, given that "[s]ubsequent exhaustion after suit is filed . . . is insufficient."[29]  Moreover, the exhaustion of administrative remedies must be *proper* — that is, in compliance with a prison grievance program's deadlines and other procedural rules — in order to suffice.[30]  The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[31]

The Second Circuit has explained that "'[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought,' . . . does not

---

[28]    *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) (quotation marks and citation omitted, emphasis in original).

[29]    *Id.*

[30]    *See Woodford v. Ngo*, 548 U.S. 81, 90-92 (2006).

[31]    *Porter*, 534 U.S. at 532.

constitute proper exhaustion."[32]  Further, "notice alone is insufficient because

'[t]he benefits of exhaustion can be realized only if the prison grievance system is

given fair opportunity to consider the grievance' and '[t]he prison grievance

system will not have such an opportunity unless the grievance complies with the

system's critical procedural rules.'"[33]  Nonetheless, "[e]xhaustion is not per se

inadequate simply because an individual later sued was not named in the

grievances."[34]  Whether identification is required depends on the prison system's

grievance requirements.[35] For example, when the prison's "grievance procedures

d[o] not require the prisoner to specifically identify in his grievance those officials

responsible for alleged misconduct" and when the "inmate grievance forms d[o]

---

[32]     *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (quoting *Braham v. Clancy*, 425 F.3d 177, 184 (2d Cir. 2005) and citing *Woodford*, 548 U.S. at 94-95) (finding plaintiff "cannot satisfy the PLRA's exhaustion requirement solely by filing two administrative tort claims, or by making informal complaints to the MDC's staff").

[33]     *Macias*, 495 F.3d at 44 (citing *Woodford* 548 U.S. at 95).

[34]     *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.") (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

[35]     *See Espinal v. Goord*, 554 F.3d 216, 223 (2d Cir. 2009).

not prompt prisoners to name the responsible parties," identification is not required for exhaustion.[36]

## D.     Deliberate Indifference to Serious Medical Needs

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment on prisoners. In *Estelle v. Gamble*,[37] the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."[38]

To sustain a claim of deliberate indifference to medical needs, a plaintiff must satisfy a two-part test containing both an objective and a subjective component. The objective component requires the alleged deprivation to be sufficiently serious.[39]  Accordingly, "only those deprivations denying 'the minimal

---

[36]      *Id.* (explaining *Jones*).

[37]      429 U.S. 97 (1976).

[38]      *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). *Accord Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. . . . In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . .") (quotation marks and citations omitted).

[39]      *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment

10

civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation."[40] This standard contemplates a "condition of urgency, one that may produce death, degeneration, or extreme pain."[41] A serious medical need arises where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."[42]

To satisfy the subjective prong of the deliberate indifference test, prison officials must have acted with a sufficiently culpable state of mind, *i.e.*, deliberate indifference.[43]   "Deliberate indifference is 'a state of mind that is the equivalent of criminal recklessness.'"[44] Plaintiff must therefore show that prison officials intentionally denied, delayed access to, or intentionally interfered with

---

violation only if those needs are 'serious.'").

[40]      *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

[41]      *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)).

[42]      *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quotation marks and citation omitted).

[43]      *See Farmer*, 511 U.S. at 834.

[44]      *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (quoting *Hathaway*, 99 F.3d at 553).

necessary medical treatment.[45]   "[T]he subjective element of deliberate

indifference 'entails something more than mere negligence . . . [but] something

less than acts or omissions for the very purpose of causing harm or with

knowledge that harm will result.'"[46]   Accordingly, recklessness can satisfy the

deliberate indifference standard where the official "knows that inmates face a

substantial risk of serious harm and disregards that risk by failing to take

reasonable measures to abate it."[47]   However, "[m]edical malpractice does not

become a constitutional violation merely because the victim is a prisoner."[48]

Similarly,

> Disagreements over medications, diagnostic techniques (e.g., the
> need for X-rays), forms of treatment, or the need for specialists or
> the timing of their intervention, are not adequate grounds for a
> Section 1983 claim.  These issues implicate medical judgments

---

[45]      *See Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found
liable under the Eighth Amendment for denying an inmate humane conditions of
confinement unless the official knows of and disregards an excessive risk to
inmate health or safety; the official must both be aware of facts from which the
inference could be drawn that a substantial risk of serious harm exists, and he must
also draw the inference.").

[46]      *Hathaway*, 99 F.3d at 553 (quoting *Farmer*, 511 U.S. at 835) (ellipsis
and brackets in original).

[47]      *Farmer*, 511 U.S. at 847.

[48]      *Estelle*, 429 U.S. at 106.

and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.[49]

## E.   Personal Involvement

It is "the government's obligation to provide medical care for those whom it is punishing by incarceration.  An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."[50]  "[I]n [deliberate indifference] actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation."[51]  A supervisory defendant's personal involvement is established when evidence shows that he:

> (1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the

---

[49]     *Sonds v. Saint Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (citing *Estelle*, 429 U.S. at 97).  *Accord Candelaria v. Coughlin*, No. 91 Civ. 2978, 1996 WL 88555, at *7 (S.D.N.Y. Mar. 1, 1996) ("A difference of opinion between an inmate and medical professionals . . . as to the appropriate course of treatment does not in and of itself constitute an Eighth Amendment violation.").

[50]     *Estelle*, 429 U.S. at 103.

[51]     *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006).

13

violation; or (5) failed to act on information indicating that unconstitutional acts were occurring.[52]

Informal communications do not satisfy the second prong.[53]

### F.     Federal Tort Claims Act

The FTCA provides a limited waiver of the United States's sovereign

immunity, authorizing suits against the government for damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[54]

"This waiver is subject to a number of exceptions, one of which is that the

government has not consented to be sued on 'any claim . . . based upon the

exercise or performance or the failure to exercise or perform a discretionary

function or duty on the part of a federal agency or an employee of the

---

[52]     *Id.* at 496-97.

[53]     *See, e.g.*, *Sealey v. Giltner*, 116 F.3d 47 (2d Cir. 1997) (two letters were insufficient); *Johnson v. Wright*, 234 F. Supp. 2d 352, 363-64 (S.D.N.Y. 2002) (listing cases "holding that an official may not be held liable for ignoring an inmate's letter of complaint").

[54]     28 U.S.C. § 1346(b) (2006); *see also id.* § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . .").

14

Government, whether or not the discretion involved be abused.'"[55]  When this

discretionary exception applies, courts lack jurisdiction over an FTCA claim.[56]

The discretionary exception applies to "day-to-day management decisions if those

decisions require judgment as to which of a range of permissible courses is

wisest."[57]

Regarding injuries resulting from alleged negligent medical care

"[p]rison officials have a duty to provide prisoners with the 'reasonably necessary

medical care which would be available to him or her . . . if not incarcerated.'"[58]

However, a prison cannot be required to meet the same standard of medical care

---

[55]     *Fazi v. United States*, 935 F.2d 535, 537 (2d Cir. 1991) (quoting 28
U.S.C. § 2680(a)).

[56]     *See, e.g.*, *id.*; *Dalehite v. United States*, 346 U.S. 15 (1953).

[57]     *Fazi*, 935 F.2d at 538 (citing *United States v. Gaubert*, 499 U.S. 315
(1991)).

[58]     *Candeleria*, 1996 WL 88555, at *7 (quoting *Langley v. Coughlin*, 888
F.2d 252, 254 (2d Cir. 1989)). *Accord Edmonds v. Greiner*, No. 99 Civ. 1681,
2002 WL 368446, at *8 (S.D.N.Y. Mar. 7, 2002) ("A person who is incarcerated is
entitled to receive adequate medical care.").

found in non-prison hospitals.[59]  Moreover, a prisoner has no right to the treatment of his choice.[60]

"When a federal employee is sued for a wrongful or negligent act, the [FTCA] empowers the Attorney General to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose . . . .'"[61]  "Upon certification, the employee is dismissed from the action and the United States is substituted as defendant."[62]

## IV.   DISCUSSION

### A.   Rivera States a Cognizable Deliberate Indifference Claim for His Treatment at FCI Otisville

Even though Rivera provides a frustratingly incomplete version of his medical history, he nonetheless provides ample facts and plausible allegations to support his claims of deliberate indifference and reckless inattention to his kidney problems.  Viewed in the light most favorable to Rivera, he states the following: (1) he is diabetic; (2) his creatinine level rose above the normal range after he

---

[59]     *See Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir. 1984).

[60]     *See McKenna v. Wright*, No. 01 Civ. 6571, 2002 WL 338375, at *7 (S.D.N.Y. Mar. 4, 2002).

[61]     *Gutierrez De Martinez v. Lamagno*, 515 U.S. 417, 419-20 (1995) (quoting 28 U.S.C. § 2679(d)(1)).

[62]     *Id.* at 420.

arrived at FCI Otisville and remained high until his kidneys began to fail; and (3) his kidney problems are a direct result of defendants' failure to provide adequate care. Connecting the dots, Rivera suggests that defendants were willfully indifferent to performing sufficient testing, interpreting the test results properly, and determining Rivera's treatment from those results. Based on these facts and allegations, Rivera has adequately pleaded a claim of deliberate indifference to his medical needs.

Defendants first contend that Rivera's claim of deliberate indifference to his serious medical needs be dismissed because this claim amounts to no more than either medical malpractice or disagreement with medical staff about the proper course of treatment. Based on the facts and allegations in the Complaint, Rivera has alleged a prima facie and plausible claim of deliberate indifference — kidney failure is sufficiently serious and defendants may have acted with reckless indifference toward Rivera's medical needs. Thus, full discovery is required to ascertain whether Rivera's claim can survive summary judgment.

Defendants alternatively contend that Rivera admitted that the medical staff was negligent, not reckless, in providing medical treatment. To support this proposition, defendants quote Rivera's Complaint, which speaks of

17

the medical staff's "negligent failure" and not their "reckless failure."[63]  But

Rivera is a *pro-se* plaintiff and is not expected to understand, let alone employ,

such linguistic subtleties.  Moreover, other portions of Rivera's Complaint support

the proposition that the medical staff behaved recklessly.

Defendants finally contend that Rivera's transfer from FCI Otisville

to FCI Butner to receive improved medical care undercuts Rivera's claim that the

medical staff was indifferent to his medical needs.  While the decision to transfer

Rivera to FCI Butner to treat his kidney problems may be commendable, it cannot

erase defendants' alleged indifference in diagnosing and treating Rivera while he

was at FCI Otisville.

### B.  Rivera's Deliberate Indifference Claim Is Dismissed as to Defendants Menifee, Sullivan and Apker

Rivera's deliberate indifference claim is dismissed against Menifee

and Sullivan because Rivera did not sufficiently allege their personal involvement.

Rivera states in his Complaint that Menifee failed to correct Rivera's medical

treatment.  This is a conclusory statement devoid of any factual support.

Moreover, Rivera's only administrative complaint to Menifee had nothing to do

---

[63]     Compl. ¶ 26.

with Rivera's kidney problems or diabetes — it dealt with prison employees mishandling Rivera's "personal papers and information."[64]

Rivera's Complaint states that Sullivan transferred Rivera to FCI Butner after she and Dr. Somer "assigned Plaintiff a classification of care level III."[65]  Rivera does not allege that Sullivan knew of Rivera's medical needs prior to the reclassification.  Because FCI Butner is a care level III institution and FCI Otisville is a care level II institution, Sullivan presumably transferred Rivera to FCI Butner to receive care that FCI Otisville simply could not provide.  Rivera makes no other allegations concerning Sullivan's personal involvement.

Rivera's deliberate indifference claim against Apker must also be dismissed.  While Rivera alleges that he told Apker during a meeting about the lack of medical attention he was receiving and that Apker failed to take any remedial action,[66] these allegations do not satisfy any of the five factors for establishing a supervisory defendant's involvement in a constitutional violation.  *First*, Rivera does not allege that Apker directly participated in providing

---

[64]    4/19/03 Request for Administrative Remedy, Ex. 4 to Compl., at US18.

[65]    Compl. ¶ 13.

[66]    *Id.* ¶ 14.

19

inadequate medical treatment. *Second*, the oral communication was too informal to be considered a report. *Third*, Rivera's allegation does not connote a custom or policy of medical indifference. *Fourth*, the Complaint does not suggest that Apker was grossly negligent in supervising the medical staff. *Fifth*, Rivera's communication did not suggest a constitutional violation; at most Rivera claimed he was a victim of medical malpractice.

### C.   Rivera Does Not State a Cognizable Deliberate Indifference Claim for His Treatment at FCI Butner

By the time Rivera arrived at FCI Butner, his kidneys were failing or had failed. Therefore, whether Rivera received appropriate medical treatment at FCI Butner is completely distinct from the inquiry into his medical care at FCI Otisville. Typically, severe kidney problems are treated with dialysis or transplant. The choice of appropriate treatment, however, is for FCI Butner's medical staff to make, not Rivera. Moreover, while Rivera prefers a transplant, he has not alleged nor explained how receiving dialysis would constitute deliberate indifference to his medical needs.

### D.   The Transfer to FCI Butner Was Lawful

Rivera's claim that he was unlawfully transferred from FCI Otisville to FCI Butner, in violation of the Constitution and/or the FTCA, is dismissed.

Ill prisoners need proper medical treatment.  Rivera is a diabetic who has

serious kidney problems.  Thus, Rivera cannot base a claim on his transfer from a

facility that cannot properly care for him — FCI Otisville — to a facility that can

— FCI Butner — because leaving him at FCI Otisville, would affect the quality of

his medical care.[67]

### E.    Rivera Exhausted His Administrative Remedies

Rivera exhausted his remedies with respect to receiving inadequate

medical treatment after learning that his kidneys were failing.  Rivera appealed his

grievance describing inadequate treatment to the General Counsel of the Federal

Bureau of Prisons.[68]  Although this grievance does not explicitly mention

defendants' names, the grievance is not insufficient on this ground.  As was the

case in *Jones v. Bock*,[69] here, the prison system's grievance requirements do not

---

[67]    Prisoner transfers are typical, day-to-day decisions for prison
supervisors.  Therefore, the discretionary exception to the FTCA applies and this
court lacks subject-matter jurisdiction over a transfer claim under the FTCA.

[68]    *See* 11/17/07 Central Office Administrative Remedy Appeal, Ex. 1 to
Compl., at US01; 01/28/08 Central Office Administrative Remedy Response, Ex.
1 to Compl., at US02.

[69]    549 U.S. 199 (2007).

21

require identification of the individual responsible for alleged misconduct[70] and the inmate grievance forms do not prompt such identification.[71]

## F.    The United States Cannot Be Substituted for the Individual Defendants Under the FTCA Claims

Defendants suggest that the United States be substituted as the sole defendant on the surviving FTCA claims (*i.e.*, medical malpractice) because a suit against the United States is the sole remedy for claims arising under the FTCA.  In order to substitute the United States for the individual defendants under the FTCA claims, however, the Attorney General must certify that the defendants were acting within the scope of their duties when the injury occurred.  The Court has not received such a certification, and therefore, cannot grant defendants' substitution request at this time.

---

[70]    *See* Administrative Remedy Program, 28 C.F.R. § 542.14(1) (2009) ("The inmate shall obtain the appropriate form . . . ."); *Id.* § (3) ("The inmate shall complete the form with all requested identifying information . . . .").

[71]    *See, e.g.*, 7/21/07 Attempt at Informal Resolution, Ex. 1 to Compl., at US06 (wherein the portion "to be completed by the Inmate" requests only that the inmate state the "nature of the problem" and "what action or resolution" he expects).

22

## V.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in

part and denied in part.  The Clerk of the Court is directed to close this motion

(docket nos. 14, 17).  A conference is scheduled for March 30, 2009 at 4:30 pm.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 5, 2009

23

## -Appearances-

**Plaintiff (pro se):**

Miguel A. Rivera
Reg. #51388-004
F.C.I. Butner
P.O. Box 1500
Butner, NC 27509

**For Defendants:**

James N. Boeving
Assistant United States Attorney
86 Chambers St., 3rd Floor
New York, NY 10007
(212) 637-2748